UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| REBECCA DYER, | ) |
|         Plaintiff, | ) |
| v. | ) |
| MAC'S CONVENIENCE STORES, LLC, d/b/a Circle K, | ) |
|         Defendant. | ) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Rebecca Dyer complains against Defendant Mac's Convenience Stores, LLC, d/b/a Circle K, as follows:

## PARTIES

1. Plaintiff Rebecca Dyer is a resident of Phippsburg, Maine.

2. Defendant Mac's Convenience Stores, LLC d/b/a Circle K ("Defendant" or "Circle K") is Delaware limited liability company which is authorized by the Maine Secretary of State to do business in the State of Maine as "Circle K".

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

4. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Portland because Plaintiff is a resident of Sagadahoc County and the majority of the events at issue occurred in Lincoln County.

1

5. Plaintiff has exhausted all necessary administrative remedies and has otherwise met all conditions before commencing suit on this matter, including receipt of a Notice of Right to Sue issued by the Maine Human Rights Commission.

## JURY TRIAL DEMAND

6. Plaintiff demands trial by jury on all issues. Fed. R. Civ. P. 38(d).

## FACTUAL ALLEGATIONS

7. Between September 13, 2019 and June 24, 2020, Plaintiff worked as a cashier for Mac's Convenience Stores, LLC, which does business in Maine as "Circle K", in both Boothbay and Wiscasset, Maine.

8. Plaintiff earned $15/hour. Her pay was increased to $18.50/hour in the late spring of 2020 as an incentive to work during the COVID-19 pandemic and as an incentive to work in the Boothbay store during the very busy tourist season.

9. A few weeks after Plaintiff started working at the Boothbay Circle K, a co-worker named William began pursuing a sexual relationship with Plaintiff. Plaintiff made it clear to William that she was not interested, but he persisted.

10. Plaintiff complained to her store manager, Tanika, about William's unwelcome sexual advances. Tanika did not respond.  A few weeks later, a female colleague told Plaintiff that William was making similar unwanted sexual advances toward her. This female colleague also complained to Tanika.

11. No investigation was done in response to Plaintiff's complaints, and, upon information and belief, no investigation was done in response to the female colleague's complaints. William was transferred to another Circle K store.

12. In March 2020, Circle K hired a man named Randy to work as a cashier in Boothbay. Randy and Plaintiff were scheduled to work many shifts together. Randy gave Plaintiff no trouble in the first month.

13. Beginning in April 2020 and continuing on a regular basis through June 2020, Randy made many unwelcome sexually charged comments to Plaintiff. He also made a number of comments that caused Plaintiff to fear for her life, all of which were reported to Tanika and her boss. For example:

- Randy came to work drunk and/or drank in the store during the work day. Plaintiff told Tanika that this was not only illegal and unacceptable, but it also caused a serious safety risk for Plaintiff, her colleagues, and customers;

- Randy told Plaintiff: "I have a .45 [caliber handgun] in my car and can put you out of your misery";

- Randy constantly told Plaintiff that he liked how she wore her hair, that she "looked real pretty", and asked her to bend over so he could look at her rear end;

- Randy told Plaintiff that he loved her many times; and

- Randy would often show up at the Boothbay store even when he and Plaintiff were not working on the same shift. Because Plaintiff often worked alone during the evening shifts, Randy's presence in the store made her feel very uncomfortable and unsafe.

14. In April and May 2020, Plaintiff complained to Tanika about Randy every week. Plaintiff told Tanika that Randy made unwelcome and highly offensive comments and that she felt extremely uncomfortable and unsafe at work. Plaintiff told Tanika what Randy had said or done, but Tanika never did or said anything to show Plaintiff that she understood or was prepared to do anything about Randy.

15. In this same time frame, Plaintiff complained to Tanika that she felt unsafe at work for another reason: Circle K insisted on keeping the back door to the store unlocked at all times (Circle K was open 24 hours a day).

16. When Plaintiff complained to Tanika that the unlocked back door made her feel unsafe, Tanika responded by saying that Circle K kept the back door open because so many employees misplaced keys. Plaintiff reminded Tanika that she worked alone on many evening shifts and that this policy (or her decision) made Plaintiff extremely uncomfortable.

17. At some point in the spring of 2020, a Circle K corporate auditor performed a random audit of Boothbay store operations. The auditor asked Plaintiff a number of questions. Plaintiff told him that the back door was always open. He told Plaintiff that leaving the back door unlocked was against Circle K policy and that he understood why Plaintiff was so nervous about this. Plaintiff told Tanika about this discussion with the auditor, but she did not respond or make comments.

18. Despite Tanika's lack of concern over Plaintiff's safety or well-being, Tanika told Plaintiff that Randy regularly contacted her on her personal cell phone, that on many such occasions Randy was highly intoxicated, and that on several occasions he made threats and inappropriate comments to her.

19. Because Tanika ignored Plaintiff's complaints about Randy, Plaintiff told Tanika in May 2020 that she wished to speak with a manager, and contacted Bambi Kotow, who served for many years as the Circle K District Manager.

4

20. Tanika told Plaintiff that she discussed Plaintiff's concerns about Randy with Bambi and that she even directed Bambi to review audio/video clips on the Boothbay store cameras, including recordings of Plaintiff's complaints to Tanika and some of Randy's inappropriate and offensive behavior.

21. Bambi met with Plaintiff shortly thereafter. Bambi told Plaintiff that she would discuss Plaintiff's concerns with Randy and launch an investigation.

22. Bambi asked Plaintiff to write a statement, which she did, describing Randy's behavior. Plaintiff signed and dated the statement and gave it to Bambi.

23. Bambi asked Plaintiff if she would be willing to transfer to the Wiscasset Circle K store. Plaintiff told Bambi that she was not interested in leaving the Boothbay store or transferring to Wiscasset.

24. Plaintiff asked Bambi why she didn't transfer Randy to another store, but Bambi didn't respond.

25. Plaintiff heard nothing further from Bambi or Tanika about her complaints about Randy or health and safety concerns. No investigation was done.

26. Shortly after Plaintiff's meeting with Bambi, Plaintiff was permanently and involuntarily transferred to the Wiscasset Circle K.  Where she had earned $18.50/hr in Boothbay, her pay was reduced to $12.75/hr in Wiscasset.

27. Plaintiff complained to Tanika and Bambi about the pay cut and her displeasure with the transfer in several phone calls or text messages.

28. To make matters worse, Randy came to the Wiscasset store and ignored Plaintiff's requests to leave her alone and leave the store.

5

29. Tanika and Bambi knew Randy (a) made inappropriate and unwelcome comments to Plaintiff on a regular basis; (b) made inappropriate comments to Tanika; and (c) was regularly intoxicated during work hours.

30. Upon information and belief, (a) neither Tanika nor Bambi took any disciplinary action against Randy, (b) Circle K arranged for Randy to (unsuccessfully) attend a drug and alcohol rehabilitation facility and provided him with time off to do so, and (c) Randy still works for Circle K.

31. On or about June 24, 2020, Plaintiff felt compelled to resign because (a) Circle K ignored Plaintiff's numerous complaints about co-worker harassment; (b) Circle K ignored Plaintiff's numerous complaints about a hostile, toxic, and unsafe work environment; (c) Circle K did nothing to address or remediate known instances of sexual harassment and predatory behavior in the workplace and created or fostered unsafe working conditions; and (d) Circle K transferred Plaintiff to Wiscasset and reduced Plaintiff's pay by over $5/hour.

## COUNT I: Retaliation in Violation of MHRA

32. Paragraphs 1-31 are incorporated by reference.

33. By opposing a number of discriminatory acts or practices, including but not limited to her employer's tolerance of a sexually hostile work environment, and because Defendant unlawfully coerced, intimidated, threatened, or interfered with Plaintiff's right to be free from workplace discrimination or harassment, Plaintiff engaged in activity protected by the Maine Human Rights Act. 5 M.R.S. § 4633.

34. Plaintiff was subjected to adverse employment action, namely, her compelled resignation on or about June 2020.

35. As a direct and proximate result of her compelled resignation, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

### COUNT II: Retaliation in Violation of MWPA

36. Paragraphs 1-35 are incorporated by reference.

37. By making several reports and complaints to her employer about (i) acts or practices which Plaintiff reasonably believed to be violations of Maine or federal laws, rules, or regulations, and (ii) acts or practices which Plaintiff reasonably believed placed at risk her health and safety and the health and safety of other Circle K employees, Plaintiff engaged in activity protected by the Maine Whistleblowers' Protection Act, 26 M.R.S. § 833.

38. Plaintiff was subjected to adverse employment action, namely, her compelled resignation on or about June 2020.

39. As a direct and proximate result of her compelled resignation, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

### COUNT III:  Sex Discrimination (Disparate Treatment)

40. Paragraphs 1-39 are incorporated by reference.

41. Plaintiff, a female, is a member of a protected class under the MHRA.

42. Plaintiff was qualified to perform the essential functions of her job.

43. Plaintiff was subjected to adverse employment action, namely, her compelled resignation on or about June 2020.

44. Defendant discriminated against Plaintiff on the basis of her sex, including but not limited to the fact that it ignored or disregarded Plaintiff's numerous complaints about workplace hostility and its more favorable treatment of Plaintiff's male co-workers, namely, William and Randy.

45. As a direct and proximate result of Defendant's discriminatory conduct and because of her compelled resignation, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

### COUNT IV:  Sex Discrimination (Hostile Work Environment)

46. Paragraphs 1-45 are incorporated by reference.

47. Plaintiff, a female, is a member of a protected class under the MHRA.

48. Plaintiff was subjected to unwelcome harassment in the workplace based on her sex or gender. The sexual harassment to which she was subjected was severe, pervasive, and altered the conditions of her employment and created an abusive work environment.

49. The sexual harassment to which Plaintiff was subjected was objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Plaintiff in fact perceived it as hostile and abusive.

50. Defendant knew about the sexual harassment, permitted a sexually hostile work environment, and failed to take prompt remedial action.

51. As a direct and proximate result of Defendant's acts and omissions, namely permitting a sexually hostile work environment, Plaintiff sustained pecuniary and non-pecuniary damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the Maine Human Rights Act:

A. Back pay and lost income from June 25, 2020 with prejudgment interest;

B. Compensatory damages in an amount not to exceed $500,000 including, but not limited to compensation for Plaintiff's mental anguish, financial stress, harm to reputation, loss of dignity and other tangible injuries;

C. An award of reasonable attorney's fees and all costs; and

D. All other damages to which plaintiff may be entitled, including punitive damages, to be determined by a jury.

**Dated:** January 27, 2022            Respectfully Submitted,

*/s/ James A. Clifford*
James A. Clifford (james@cliffordclifford.com)
*/s/ Andrew P. Cotter*
Andrew P. Cotter (andrew@cliffordclifford.com
CLIFFORD & CLIFFORD, LLC
10 Moulton St., 5th Floor
Portland, ME 04101
(207) 613-9465
**NOTE new address/telephone number**